STEVENS LUMBER COMPANY, Respondent, v. KANSAS CITY PLANING MILL COMPANY, Defendant; KANSAS CITY LUMBER COMPANY, Appellant.

Kansas City Court of Appeals, November 19, 1894.

Fraudulent Conveyances : PARTICIPATION OF TRANSFEREE. Whatever fraud the vendor may have intended and actually practiced upon his creditors in making a sale of his property to the vendee, if the latter had no part in it, his purchase must be upheld. Peculiar facts of the case discussed.

*Appeal from the Jackson Circuit Court.*—HON. EDWARD M. SCARRITT, Judge.

REVERSED.

STATEMENT BY ELLISON, J.

Plaintiff is a lumber company located in the state of Tennessee and defendant is a planing mill company doing business in Kansas City. The garnishee is a lumber company also doing business in Kansas City, and located near the defendant company. Plaintiff obtained judgment against defendant for a bill of lumber furnished to said company. On this judgment an execution was issued and the garnishee herein was served with a notice of garnishment. The answer was

a denial to the interrogatories propounded. Plaintiff took issue with the answer by a reply thereto in which fraud was set up against the defendant company and the garnishee, whereby it was charged that the defendant and the garnishee defrauded and deprived plaintiff out of the right to enforce a mechanic's lien for the lumber so sold to defendant. Said reply to the garnishee's answer is in the following words: "Now come the above named plaintiffs and for their denial of the answer of the above named garnishee to the interrogatories propounded to it by plaintiffs herein say that they deny each and every allegation therein contained, and say that in the fall of 1889 one B. F. Jones became the original contractor with Nancy V. Thorne and Dr. Thorne, her husband, for erecting a five-story brick building at Ninth and Central streets, in Kansas City, Missouri, on land then and there owned by said Nancy V. Thorne and Dr. Thorne, her husband; that he let the contract for the millwork of said building to the defendant, the Kansas City Planing Mill Company; that the said planing mill company sublet the contract for furnishing the inside finishing material for said building according to the specifications and details of the architect employed by the owners of said building to the plaintiffs, the A. M. Stevens Lumber Company; that under said contract plaintiffs did manufacture according to the specifications and details of the said architect of said Thorne building the said finishing material specified in Exhibit "B" herewith filed and made a part hereof, and did under said contract furnish said finishing material for said building, and that said finishing material was used in the construction of said building, and plaintiffs were fraudulently deprived of their right to file and establish according to law a mechanic's lien on said building and the land on which it is situated, to secure their pay

for said material, by the following fraudulent contrivance and fraudulent collusion between the above named defendant and above named garnishee. After said material had been shipped by plaintiffs to defendant for the purpose of being used in the construction of said building, and said material had been received by defendant in Kansas City, and while the purchase price of said material was unpaid, defendant fraudulently sold and delivered said material to the Kansas City Lumber Company, and received credit therefor on an alleged antecedent debt alleged to be due from defendant to garnishee, said garnishee knowing at the time that plaintiff had manufactured said material especially for said Thorne building according to specifications and details of the architect thereof, and furnished the same to defendant to be used in the construction of said building, and knowing also that the defendant was then insolvent and that plaintiffs were distant nonresident creditors, and not on the ground to watch the fraudulent contrivances of defendant; that afterwards the said Kansas City Lumber Company delivered said material to said Thorne building, and the owners of said building paid the Kansas City Lumber Company the sum of $1,309.10 for said material, which had been manufactured by plaintiff especially for said building as aforesaid; that the said owners paid the said garnishee for said material in good faith, that the Kansas City Planing Mill Company transferred said material to the said garnishee, the Kansas City Lumber Company, and procured it to actually deliver said material to said Thorne building and to receive said pay therefor direct from the owners of said building for the purpose of hindering, delaying and defrauding plaintiffs in the collection of the purchase price of said material, and the said garnishee knew of and participated in said fraudulent intention

and are liable to plaintiffs in the sum of $1,309.10, the amount it received for said material.

"Plaintiffs further state that at the same time, and as a part and parcel of the same fraudulent transaction, defendant transferred to said garnishee five thousand, two hundred and ninety-eight feet of poplar squares of the value of $124.50, which had been shipped to defendant in one of the cars containing a part of said finishing material, the purchase price of which was unpaid at the time it was transferred to garnishee, as aforesaid, and known to be unpaid by garnishee; that the transfer of said poplar squares was made to garnishee for the purpose of defrauding plaintiffs, and garnishee knew of and participated in said fraudulent intent."

*Austin & Austin* with *J. T. Clayton* for appellant.

(1) The question of mechanic's lien has nothing to do with this case, for the reasons given before, as well as because the denial of the plaintiff to the answer of the garnishee shows that the material did go into the building that it was designed for, and if the acts complained of were true, the same were void in law and of no effect, and therefore did not prevent plaintiffs from filing their statement and enforcing their lien if they had any; because no statement was ever filed for such lien, although the garnishment summons in this case was served more than one year after the sale of the two car loads of lumber complained of.    (2) The court erred in allowing testimony showing what garnishee got for the property afterwards. He had to run the risk as to whether the Thorne building would take this lumber afterwards. They were under no obligation to take it. The contract with B. F. Jones had been thrown up and

disregarded a month before that. If they had refused to take it the garnishee probably would have lost $300 or more. Fortunately for it they did take it, and he made about $300. *Morgan v. Wood*, 38 Mo. App. 255. Wait on Fraudulent Conveyances [2 Ed], sec. 323. (3) The plaintiffs never had any right to a mechanic's lien. The sale of the two car loads of lumber was upon the credit alone of the defendant, the plaintiff not knowing for more than a year after the lumber was delivered what building it was intended for in Kansas City, Missouri. To entitle a party to a mechanic's lien, sale must be upon the credit of the building; if on credit of contractors alone, there is no lien. Phillips on Mechanics' Liens [2 Ed], secs. 123, 124, 127; *Weaver v. Sells*, 10 Kan. 609; *Delahay v. Goldie*, 17 Kan. 265; *Wagner v. Darby*, 49 Kan. 343; *Chapin v. Paper Works*, 30 Conn. 461, 471, 472; 2 Jones on Liens, sec. 1330; A mechanic's lien attaches to a building or improvements erected with the materials furnished, and does not follow the materials into the hands of a vendee of a purchaser and attach to a building he may use them to erect. *Heaton v. Horr*, 42 Iowa, 187, 190, 191. (4) In this state no material man is entitled to a mechanic's lien upon the building or property of the owner until the materials have actually entered into the construction of the building or improvements. Until the materials are put into the actual construction of the building, and while still in the control and possession of the person owning them, they are liable to seizure on attachment or execution for the debts of the owner, and can be sold or used for the purpose of paying *bona fide* debts. *Fitzpatrick v. Thomas*, 61 Mo. 516; *Schullenberg v. P. H. Institute*, 65 Mo. 295; *Deardorf v. Everhart*, 74 Mo. 37. (5) To invalidate conveyance or transfer given to secure one creditor to prefer him above other creditors, it is

necessary to prove not only that the creditor knew that the conveyance was made with a fraudulent intent, but also to prove that the creditor colluded with the debtor to place the debtor's property or some part thereof out of the reach of his creditors, after receiving his own debt. *Deering v. Collins*, 38 Mo. App. 73; *Morgan v. Wood*, 38 Mo. App. 255; *Shelley v. Boothe*, 73 Mo. 74, 76; *Dougherty v. Cooper*, 77 Mo. 528; *Holmes v. Braidwood*, 82 Mo. 610; *Sexton v. Anderson*, 95 Mo. 373; *State to use of Solomon v. Mason*, 20 S. W. Rep. 629; *Strauss v. Rothan*, 102 Mo. 261. (6) The garnishee in this case had the right to have explained what the words "participation in" meant as applicable to the facts in this case, that is, that the garnishee had colluded with the debtor to place the property sold, or some part of it, out of the reach of the creditors of the debtor. Therefore the error of the court in striking out and modifying as it did the instruction requested by garnishee numbered 8. *Harwick v. Cox*, 50 Mo. App. 509–514; *Albert v. Besell*, 88 Mo. 150–153. (7) Mere intention to defeat execution of a creditor or any incohate right to a lien known by debtor and participated in by creditor will not avoid a sale as fraudulent which is made for the *bona fide* purpose of preferring the creditor. *Holbird v. Anderson*, 5 Term Rep. 235, also cited as 5 Durnford & East, 235; *Pickstock v. Lyster*, 3 M. & S. 371; *Wood v. Dixie*, 7 Ad. & Ell. (N. S.) 892, or 7 Q. B. 892; *Rapier v. Gulf City Paper Co.*, 77 Ala. 126, 128; *Crawford v. Kirksey*, 55 Ala. 282; *Levy v. Williams*, 79 Ala. 171; *Carter v. Coleman*, 84 Ala. 256; *Covanhovan v. Hart*, 21 Pa. St. 495; *Brown's Appeal*, 86 Pa. St. 528; *Walker v. Marine Bank*, 98 Pa. St. 578; *Banking Co. v. Fuller*, 110 Pa. St. 163, 164; *Kirkendall v. McDonald*, 15 Mo. 416, 420; *Shelley v. Boothe*, 73 Mo. 74, 76, 77; *Storey v. Agnew*, 2 Brad. (Ill.) 353; *Hauselt v. Vilmar*, 2 Abbott

(N. C. N. Y.) 222. (8) In any view of the case the plaintiff had no right of lien, but a mere expectancy, which never became a realty, and therefore the disposal of the two car loads of lumber invaded no right of the plaintiffs and caused them no legal injury. Upon this question see *Hutchings v. Hutchings*, 7 Hill N. Y. C. L. 104; Bigelow's Law of Frauds, p. 13, sec. 16; Hill on Torts [3 Ed.], p. 92, chap. 3, sec. 16; *Carter Bros. v. Coleman*, 84 Ala. 256.

*Wash Adams, Numa F. Heitman* for respondents.

(1) The well established law in Missouri is, that it is the duty of the court to submit to the jury, only the disputed facts, and where facts are so plainly proved that there can be no reasonable contention against them, it is not necessary or proper to embody such facts into the hypothesis of the instruction. *Slayback v. Gerbhardt*, 1 Mo. App. 333; *Russell v. Ins. Co.*, 55 Mo. 585, 594; *Hall v. Railroad*, 74 Mo. 298; *Chouteau v. Uhrig*, 10 Mo. 62; *Herniman v. Railroad*, 27 Mo. App. 435; *Price v. Hurberle*, 25 Mo. App. 202; *Caldwell v. Stevens*, 57 Mo. 589; *Halen v. O'Keefe*, 38 Mo. App. 273; *Field v. Railroad*, 80 Mo. 203, 206. (2) The court will readily see that the court below in the matter of giving and refusing instructions took the proper view as to what was the real issue. The court below did not consider that it was trying a mechanic's lien suit in which all the various phases of the mechanic's lien law should be presented to the jury, but tried the case on the theory that the only issue to be determined was whether or not the attempted preference in question was accepted by the garnishee for the sole purpose of getting payment of its debt, or whether or not it accepted said preference with the additional purpose in view of aiding and

abetting the defendant in an. intent on its part to defraud the plaintiffs. In support of the above theory that the fraudulent transferee of assets from a judgment or attachment debtor is chargeable on account of such assets so fraudulently transferred as garnishee, we refer to the following authorities. *Brokerage Co. v. Cronin,* 14 Mo. App. 586; *Joseph v. Baldridge,* 43 Mo. App. *loc. cit.* 337; *Eyerman v. Krieckhaus,* 7 Mo. App. 445; *Lackland v. Garesche,* 56 Mo. *loc. cit.* 271; *Straus v. Ayers,* 34 Mo. App. *loc. cit.* 255; *Humphreys v. Milling Co.,* 98 Mo. *loc. cit.* 550; *Harris v. Harris,* 25 Mo. App. 496; *Moser v. Claes,* 23 Mo. App. 420; *Coffin Co. v. Rubelman,* 15 Mo. App. 280; 1 Freeman on Execution [2 Ed.], sec. 159*b.* (3) The admission of incompetent testimony to prove a fact is no ground for reversal of judgment where the evidence of the complaining party himself fully establishes the fact, or if there was competent evidence of the fact, and the contrary was not attempted to be shown. *Schulter v. Weidenbrocker,* 23 Mo. App. 440; *State to the use v. Tiechman,* 13 Mo. App. bottom p. 579; *Stern v. Mason,* 16 Mo. App. 473; *Kinealy v. Macklin,* 10 Mo. App. 583; *Matthews v. Fitzwilliam,* 12 Mo. App. 445; *Lakebrink v. Boehmer,* 8 Mo. App. 561; *Blackwell v. Bailey,* 1 Mo. App. 328; *Ridgeway v. Kennedy,* 52 Mo. 24; *Lesinsky v. Great Western Despatch,* 14 Mo. App. 598; *Reber v. Tower,* 11 Mo. App. 199; *Burney v. Sharp,* 78 Mo. 73. (4) The real issue was fraudulent intent or no fraudulent intent. And if each circumstance bearing upon the issue could be treated as an issue, and instructions be given *pro* and *con* on such circumstances, then in many fraud cases there would be absolutely no end to instructions, and such instructions bearing on mere circumstances, rather than on the issue proper, have always been condemned in Missouri as being mere comments on the evidence, and as tend-

ing to confuse the jury rather than to enlighten them.
*Crawshaw v. Sumner*, 56 Mo. 517; *Crews v. Railroad*,
19 Mo. App. 302; *Galvin v. Railroad*, 21 Mo. App. 273;
*Storms v. White*, 23 Mo. App. 31; *Larrimore v. Legg*,
23 Mo. App. 645; *Hoffman v. Harrington*, 23 Mo. App.
573; *Brink v. Railroad*, 17 Mo. App. 178; *Matthews v.
Elevator Co.*, 59 Mo. 478. (5) The maxim is, "He
who aids another to commit a fraud, is himself guilty
of it." The jury found, under instruction number 1,
that the garnishee took this material for the purpose
of aiding the defendant to violate the aforesaid duty
to the plaintiffs under the mechanic's lien law, that
defendant and garnishee both had as their object in
view the defeat of plaintiff's mechanic's lien. The
garnishee is therefore equally guilty of said fraud with
the defendant. *Simmons v. Carter*, 60 Mo. 581; R. S.
1889, sec. 6728. (6) A transaction which is fraudu-
lent in part for any reason, is fraudulent throughout.
*McNichol v. Rubelman*, 13 Mo. App. 515. As to that
part of the transfer which relates to the gift of the
$351.36 from this insolvent debtor to the preferred
creditor, the transfer is fraudulent and void regardless
of the intention of the parties. (7) On the question
of a preferred creditor taking the assets of an insol-
vent debtor at an unfair valuation, see the following
authorities: *Alberger v. White*, 23 S. W. Rep. (Mo.)
92; *Hanna v. Findley*, 33 Mo. App. 645; *Burgert v.
Bothert*, 59 Mo. 80; *Lewis v. Hughs*, 30 Pac. Rep.
177; *Stewart v. Smith*, 21 S. W. Rep. (Tex.) 1026;
*Dyer v. Rosenthal*, 45 Mich. *loc. cit.* 591; *Carson v.
Murray*, 15 Mo. 378; *Kuykendall v. McDonald*, 15 Mo.
417; 13 Mo. App. 515, *supra;* 33 Mo. App. 645,
*supra.* (8) The validity of a preference is founded on
the rule that where the equities are equal between two
creditors the one who first obtains the legal title, will
have the priority. Bump on Fraudulent Conveyances,

179. By virtue of their contract and the mechanic's lien law, the plaintiffs took a specific security from their debtor, for the purchase price of said finishing material, at the time of the creation of their debt for said material, hence the equities between the plaintiffs' debt and the debt of the garnishee, were not equal. This is not the case of a race between creditors standing upon an equal footing. Here the plaintiffs had a right which the law gave them to follow these materials into the building and require payment therefor notwithstanding the insolvency of the defendant. If the garnishee intentionally assisted in depriving plaintiffs of this right, is it not a fraud which should deprive it from enjoying the fruits of such a transaction? Principle and authority both answer this question in the affirmative. *Alberger v. White*, 23 S. W. Rep. (Mo.) 92; *Spear v. Wardell*, 3 Denio, 607; *Gaines v. Gaines*, 26 Iowa, 337; *Waterbury v. Sturtevant*, 18 Wend. 353; *Hyslop v. Clarke*, 14 Johns. 458; *Reed v. Noxon*, 48 Ill. 323; *Jacques v. Greenwood*, 12 Abb. 232; *Crownshead v. Kittrigg*, 7 Met. (Mass.) 520; *Holmes v. Bradwood*, 82 Mo. 616; *McVeigh v. Baxter*, 82 Mo. 518. (9) The record shows that this is the second jury that has pronounced the transaction in question fraudulent. Under such circumstances this court will very clearly see that prejudicial error has been committed before it will cause this question of fraudulent intent of the garnishee to be submitted to the third jury. *Schlicer v. Gordon*, 19 Mo. App. *loc. cit.* 483; R. S. 1889, secs. 2169, 2241; *Weir v. McCorkle*, 1 Mo. 588; *Swearengen v. Orne*, 8 Mo. 707; *Nelson v. Foster*, 66 Mo. 381; *Bank v. O'Connel*, 23 Mo. App. 165; *Brooking v. Shinn*, 25 Mo. App. 277; *Sears v. Wall*, 49 Mo. 359; *Henshen v. O'Bannon*, 56 Mo. 289; *Porter v. Harrison*, 52 Mo. 524; *Carl v. Railroad*, 55 Mo. 476; *Budd v. Hoffheimer*, 52 Mo. 297; *Meyers v. Rail-*

*road*, 59 Mo. 223; *Brown v. Ins. Co.*, 68 Mo. 133; *Clements v. Maloney*, 55 Mo. 352; *Parton v. McAdoo*, 68 Mo. 327; *Bradford v. Floyd*, 80 Mo. 207; *Cooper v. Johnson*, 81 Mo. 483; *Stone v. Vimont*, 7 Mo. App. 277.

ELLISON, J.—In considering this case, we may concede much of the contention upon which plaintiff seeks to sustain its judgment. The charge made here, when considered in connection with the evidence, is, that the defendant sold the lumber to the garnishee for the purpose and with the intent to cheat and defraud plaintiff, and that the garnishee participated in such purpose and intent. We shall address ourselves to the question whether the garnishee participated in the fraud. If there is a failure of proof in this respect, the case against the garnishee must fail, since whatever fraud upon plaintiff may have been intended, and actually practiced by the defendant in making the sale of the lumber to the garnishee, if the latter had no part in it, its purchase must be upheld. *Alberger v. White*, 117 Mo. 347.

The case shows, indeed it is not disputed, that the garnishee was a *bona fide* creditor of the defendant. As such, it was its right and privilege to seek the payment of its claim as best it could, and so long as its sole object was to secure payment of the claim it is of no consequence that it may have had knowledge that it would thereby deprive other creditors of the means of securing theirs. And the known insolvency of defendant, so strongly insisted upon by plaintiff, while not inappropriate, as a circumstance, when properly connected with other matters of substance, in making out a charge of fraud under certain connecting facts, in this case may be called to the aid of the garnishee. The fact that the garnishee knew or feared defendant's insol-

vency is certainly among the very best of reasons for wanting, to a degree, of anxiety, to secure the claim. These two things, then, appear prominently in the case, viz.: The fact that the garnishee had a *bona fide* claim, and the legal right to secure it. We must look, then, for evidence which shows fraud on the part of the garnishee, or a participation in the fraudulent purpose of the defendant. We find none, and are, therefore, of the opinion that the demurrer to plaintiff's evidence should have been sustained. There is a greal deal of matter put before us to establish fraud on the part of the garnishee, but when the suspicions, which may be implied from the questions asked by counsel, are subtracted there remains nothing of substance. There is scarcely a pretense of fraud being directly shown, and circumstances are claimed to establish it. We have not been able to discover a single fraudulent circumstance in the evidence, when separated from the coloring which it receives from counsel. The insolvency of defendant stands as much for the garnishee as for the plaintiff. The fact that defendant's general manager and the garnishee's president were acquaintances of several years' standing, and that their places of business were four hundred feet apart, are too trivial for serious consideration. We freely concede that, when it is shown, as was done in this case, that the lumber which plaintiffs sold these defendants was material gotten out by plaintiff on the order of defendant according to certain specifications, and was to be used in the construction of a building in Kansas City, and that some days after it had arrived in the city, while yet in the cars, it was sold and delivered by defendant to the garnishee, who, in a few days thereafter, sold it at an advance of $300 over what it paid defendant, to the owner of the building in which it was originally designed to go by defendant, the owner putting it in the

building under the specifications which were given in the first instance, and that, by this means, defendant being insolvent, plaintiff has lost the price it was to receive, a case is made sufficient to put a just man in a mood of inquiry. But when it appears, as a result of that inquiry, that plaintiff sold the lumber on the credit of defendant without knowing what building it was designed for (whether this avoided their mechanics' lien, as contended by the garnishee, need not be considered now), that the garnishee had a valid claim, which it was anxious to secure, and that it did not know that the lumber was not paid for; that it did not know, at the time of purchasing from defendant, that the lumber was designed for the Thorne building, and when it is considered that upon learning the lumber was designed for the Thorne building, being cut according to specifications for that building, the most natural thing for the garnishee to do would be to try to utilize such lumber at the place it was found to be designed for. When this information is gained, there is nothing in the case of an illegal or even an immoral color. But it appears that the garnishee got from Thorne, as before stated, a profit of some $300. That is shown to have resulted in this way: When the garnishee demanded payment from the defendant of its claim, the defendant had no money, but offered garnishee a choice of enough of the lumber yet unincumbered at cost price to cover a large portion of the garnishee's claim. That this was a *fair* price *was conceded by plaintiff*, since the testimony showed that plaintiff would have duplicated the bill for the same money to the garnishee. But when the garnishee went to sell to Thorne it sold at the price which defendant had bargained; that is to say, Thorne paid this garnishee the same price defendant was to have been

paid. If defendant had carried out its contract, and delivered to the Thorne building, it would have made a profit of $300 on the lumber which plaintiff sold them; as it was, the garnishee made this profit. We fail to see how this can taint the garnishee's action as fraudulent. Keeping in mind that the garnishee had a *bona fide* debt, that it paid full value for the lumber—paid the very price plaintiff was to get—we are of the opinion that the profit realized by the sale to Thorne was legitimate. The profit on the deal with Thorne might have been great or small—depending on the bargain—but the fact that it was a profit, or that it was the same which defendant was to realize, is of no consequence. Before all the lumber was delivered to the garnishee, defendant gave it an order for $1,000, which was owing to defendant by the contractor for the Thorne building, this order was accepted by the garnishee as collateral on the entire debt, which was more than the amount here involved. The testimony was, that the garnishee did not place any value on this order, since Jones was insolvent, and that it was cancelled about the time of the sale. We can not see where any reasonable inference against the garnishee can be drawn from this. Nor is there anything of substance to be drawn from the conduct of the garnishee in concluding to take the cars of lumber on the track instead of that in the yard. If the garnishee had chosen the reverse and taken that in the yard instead of that in the car, we can well see where and how a case could be urged against it by some creditor interested in the former of quite as much substance as the one here made.

We have not found in the record a single motive to actuate this garnishee in assisting the defendant to defraud the plaintiff. It had an honest claim of its own. It suddenly discovered that defendant had placed an incumbrance upon its (defendant's) property, and

it immediately began to look out for itself, as it legitimately might do, even though it knew the consequence of securing the claim would operate to defraud others. "In such cases, if the assets are not large enough to pay all, somebody must suffer. It is a race in which it is impossible for everyone to be foremost. He who has the advantage, whether he gets it by the preference of the debtor or by his own superior vigilance, or by both causes combined, is entitled to what he wins, provided he takes no more than his honest due." *Covanhovan v. Hart*, 21 Pa. St. 495; *Mayburg v. Jacobs*, 40 Mo. App. 128.

There were some other matters dwelt upon by plaintiff which we have considered, but which are of too tedious a nature to examine or discuss in an opinion. There has been gotten together by the combined effort of counsel for each party a mass of matter occupying, as mere statement, more than thirty-two printed pages. An exceedingly lengthy case has been made out of little material. Twenty-nine instructions were asked by the garnishee; nine were given and twenty were properly refused. To maintain this judgement, we would have to make a rule far too circumscribed for the natural, as well as business, course of an honest creditor struggling to make himself whole out of the assets of his failing debtor. The result is, we must reverse the judgment. SMITH, P. J., assents; GILL, J., dissents.